SOUTHERN DISTRICT OF MISSISSIPPI
FILED
DEC - 5 2005
J T NOBLIN, CLERK
BY DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

STATE FARM FIRE AND CASUALTY COMPANY, PLAINTIFF

VS. CIVIL ACTION NO. 3:05cv723 HTW-JCS

JEFFREY A. STALLWORTH,
AND TELAYA BROWN DEFENDANTS

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW**, the Plaintiff, State Farm Fire and Casualty Company, (hereinafter "State Farm"), by and through its attorney of record and files its action for a declaratory judgment, pursuant to 28 U. S. C. 2201 and Rule 57 of the Federal Rules of Civil Procedure, to determine the rights and duties of the above referenced parties under a certain contract of insurance issued by Plaintiff to Anderson United Methodist Church, and in support thereof, would show as follows:

## PARTIES

1. State Farm Fire and Casualty Company is incorporated under the laws of the State of Illinois, and is licensed to and is doing business in the State of Mississippi.

2. The Defendant, Jeffrey A. Stallworth, is an adult resident of the State of Hinds County, Mississippi.

3. Defendant Telaya Brown, is an adult resident of Prince George County, Maryland.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to the provisions of 28 USC §1332 (a), as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum and value of $75,000.00, based upon the coverages at issue in

this declaratory judgment action.

5. Venue is properly laid in the Jackson Division of the Southern District of Mississippi pursuant to 28 USC §1391 (a) and ©), as well as the Uniform District Court Rules of the Northern and Southern Districts of Mississippi .

**REQUEST FOR DECLARATORY RELIEF**

6. There is a real, substantial, and justiciable controversy between the parties concerning the rights and duties of the parties with respect to the contract of insurance at issue here.

7. This is an action for a declaratory judgment pursuant to 28 USC §2201 for the purpose of determining questions of actual dispute and controversy between the parties as will be more fully described herein.

**CONTRACT OF INSURANCE ISSUED TO ANDERSON UNITED METHODIST CHURCH**

8. State Farm issued a policy of insurance, Policy Number 99-BM-4457-2 ("Church policy"), to Anderson United Methodist Church having effective dates from November 4, 2000 through November 4, 2001, at 12:01 a.m. *See* Certified Copy of Policy 99-BM-4457-2, attached hereto as Exhibit "A".

**CONTRACTS OF INSURANCE ISSUED TO JEFFREY A. STALLWORTH**

9. State Farm issued a homeowner's policy of insurance, Policy Number 24-B8-0180-9 ("Homeowners policy"), to Jeffrey A. Stallworth, having effective dates from May 26, 2001 through May 26, 2002, at 12:01 a.m. *See* Certified Copy of Policy 24-B8-0180-9, attached hereto as Exhibit "B".

10. State Farm issued a personal umbrella liability policy of insurance, Policy Number 24-B6-7673-8 ("PLUP"), to Jeffrey Stallworth, having effective dates from September 27, 2000 through September 27, 2001 at 12:01 a.m. *See* Certified Copy of Policy 24-B6-7673-8, attached hereto as Exhibit "C".

**CLAIMS AGAINST DEFENDANT STALLWORTH**

11. On August 9, 2002, Defendant Brown filed suit against Defendant Stallworth in the Circuit Court of the First Judicial District of Hinds County, Mississippi, Cause No. 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 CIV, alleging an entitlement to damages from Stallworth as a result of alleged sexual misconduct, including specific claims for assault and battery, false imprisonment, and intentional infliction of emotional distress. *See* Hinds County Complaint, attached hereto as Exhibit "D".

12. Defendant Brown also filed suit against Defendant Stallworth in Prince George's County Maryland, seeking an entitlement to damages based upon the same allegations as in the Hinds County suit. *See* Maryland Complaint, attached hereto as Exhibit "E".

13. The Complaint filed in Hinds County provides as follows:

****

14. During the week that followed their initial meeting, Defendant Stallworth and Plaintiff spoke on several occasions by telephone. During those conversations, Defendant Stallworth advised Plaintiff that Defendant Anderson Church was seriously interested in placing insurance policies for the benefit of dependant children of parishioners of Defendant Anderson Church. Defendant Stallworth further indicated to Plaintiff that Defendant Anderson Church was desirous of placing said insurance policies through Plaintiff's agency.

15. Thereafter, Defendant Stallworth, as agent, servant and/or employee of Defendants Anderson Church and Mississippi Methodist, requested an expedited meeting with Plaintiff to discuss the terms and conditions under which Defendants could place insurance coverage through her agency. Plaintiff agreed to meet with Defendant Stallworth.

16. Based on the conversations had with Defendant Stallworth and in preparation for her scheduled meeting with him, Plaintiff immediately began to search competitive insurance rates in an effort to prepare a proposal, including costs and coverage, which would address the needs of Defendants Anderson Church and Mississippi Methodist.

17. On or about August 13, 2001, Defendant Stallworth traveled to Prince George's County, Maryland for the purpose of meeting with Plaintiff on church related insurance matters. Prior to arriving in Maryland, Defendant Stallworth advised Plaintiff that he had made reservations at a local hotel. However, when Defendant Stallworth arrived in the State of Maryland, he advised

Plaintiff that the hotel where he had allegedly made reservations mistakenly misplaced the reservation such that he would be unable to lodge at the hotel as there were no longer any vacancies.

18. Due to the alleged misplaced reservation, Defendant Stallworth asked Plaintiff if it would be possible to stay in her home. Given the Defendant's professed lack of lodging, his role as the appointed spiritual leader of a well known Methodist Church and because of his close relationship with her family member, Plaintiff agreed to provide Defendant Stallworth with lodging. Plaintiff advised Defendant Stallworth he could stay in a guest bedroom in her home.

19. On or about August 14, 2001, Defendant Stallworth in his capacity as agent, servant and/or employee of Defendants Anderson Church and Mississippi Methodist met with Plaintiff and a manager of an insurance company in Fairfax, Virginia to pursue Defendant Anderson Church's purchase of insurance policies through Plaintiff's agency.

20. In the early morning hours of August 15, 2001, long after Plaintiff had retired for the night and while Plaintiff was sound asleep, Defendant Stallworth entered Plaintiff's bedroom without her permission, climbed into her bed and awakened her by rubbing his erect penis against her.

21. Defendant Stallworth then forcibly turned Plaintiff onto her back, forcibly removed her clothing, pinned her down on the bed and forced her to engage in intercourse against her will and without her consent.

22. After forcing Plaintiff to engage in non-consensual intercourse, Defendant Stallworth continued his sexual assault on Plaintiff by violently forcing her to engage in yet another non-consensual sexual act.

23. Plaintiff repeatedly pleaded with Defendant Stallworth to stop his assault, entreaties which were ignored by Defendant Stallworth as he continued to force himself upon her.

24. Plaintiff attempted to free herself, but was unsuccessful due to the fact that Defendant Stallworth was significantly larger and stronger than she.

25. On or about March 4, 2002, in the Circuit Court for Prince George's County, Defendant Stallworth voluntarily entered a plea of guilty to a offense and admitted that he sexually battered Plaintiff on or about August 15, 2001.

****

14. The Complaint filed in Maryland provides substantially the same allegations as the Hinds County Complaint:

****

16. During the week that followed their initial meeting, Defendant Stallworth and Plaintiff spoke on several occasions by telephone. During those conversations, Defendant Stallworth advised Plaintiff that Defendant Anderson Church was seriously interested in placing insurance policies for the benefit of dependant children of parishioners of Defendant Anderson Church. Defendant Stallworth further indicated to Plaintiff that Defendant Anderson Church was desirous of placing said insurance policies through Plaintiff's agency.

17. Thereafter, Defendant Stallworth, as agent, servant and/or employee of Defendants Anderson Church and Mississippi Conference, requested an expedited meeting with Plaintiff to discuss the terms and conditions under which Defendants could place insurance coverage through her agency. Plaintiff agreed to meet with Defendant Stallworth.

18. Based on the conversations had with Defendant Stallworth and in preparation for her scheduled meeting with him, Plaintiff immediately began to search competitive insurance rates in an effort to prepare a proposal, including costs and coverage, which would

address the needs of Defendants Anderson Church and Mississippi Conference.

19. On or about August 13, 2001, Defendant Stallworth traveled to Prince George's County, Maryland for the purpose of meeting with Plaintiff on church related insurance matters. Prior to arriving in Maryland, Defendant Stallworth advised Plaintiff that he had made reservations at a local hotel. However, when Defendant Stallworth arrived in the State of Maryland he advised Plaintiff that the hotel where he had allegedly made reservations mistakenly misplaced the reservation such that he would be unable to lodge at the Hotel as there were no longer any vacancies.

20. Due to the allegedly misplaced reservation, Defendant Stallworth asked Plaintiff if it would be possible to stay in her home. Given the Defendant's professed lack of lodging, his role as the appointed spiritual leader of a well known Methodist church and because of his close relationship with her family member, Plaintiff agreed to provide Defendant Stallworth with lodging. Plaintiff advised Defendant Stallworth he could stay in a guest bedroom in her home.

21. On or about August 14, 2001, Defendant Stallworth in his capacity as agent, servant and/or employee of Defendants Anderson Church and Mississippi Conference met with Plaintiff and a manager of an insurance company in Fairfax, Virginia, to pursue Defendant Anderson Church's purchase of insurance policies through Plaintiff's agency.

22. In the early morning hours of August 15, 2001, long after Plaintiff had retired for the night and while Plaintiff was sound asleep, Defendant Stallworth entered Plaintiff's bedroom without her permission, climbed into her bed and awakened her by rubbing his erect penis against her.

23. Defendant Stallworth, then forcibly turned Plaintiff onto her back, forcibly removed her clothing, pinned her down on the bed and forced her to engage in intercourse against her will and without her consent.

24. After forcing Plaintiff to engage in nonconsensual intercourse, Defendant continued his sexual assault on Plaintiff by violently forcing her to engage in yet another nonconsensual sexual act.

25. Plaintiff repeatedly pleaded with Defendant to stop his assault, entreaties which were ignored by Defendant as he continued to force himself upon her.

26. Plaintiff attempted to free herself, but was unsuccessful due to the fact that Defendant is significantly larger and stronger than Plaintiff.

27. On or about March 4, 2002, in the Circuit Court for Prince George's County, Defendant Stallworth voluntarily entered a plea of guilty to a sexual offense and admitted that he sexually battered Plaintiff on or about August 15, 2001.

****

15. As a result of the filing of these two Complaints Defendant Stallworth has made claims with State Farm for defense and indemnity as to the two suits under the three (3) policies of insurance referenced herein.

16. State Farm has previously denied Stallworth coverage under all three (3) policies, the two (2) issued to Stallworth (the Homeowner's policy and the PLUP), and the one (1) issued to the Anderson United Methodist Church (Church policy).

17. Stallworth has made a Motion in the Hinds County action for the Court to

determine coverage issues; however, State Farm is not a party to that action. *See* Jeffrey A. Stallworth's Motion to Provide Him With a Defense Under State Farm/Anderson United Methodist Church Policy 99-BM-4457-2, attached hereto as Exhibit "F".

**RELEVANT POLICY PROVISIONS**[1]

18. The Church policy provides, in relevant part, as follows:

**CHURCH POLICY - SPECIAL FORM 3**

****

**SECTION II**
**COMPREHENSIVE**
**BUSINESS LIABILITY**

---

**COVERAGE L -**
**BUSINESS LIABILITY**

We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury or advertising injury** to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments. This insurance applies only:

1. to **bodily injury or property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period;

2. to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

****

**BUSINESS**
**LIABILITY**
**EXCLUSIONS**

Under Coverage L, this insurance does not apply:

1. to **bodily injury** or **property damage:**

   a. expected or intended from the standpoint of the insured; or

   b. to any person or property which is the result of willful and malicious acts of the

---

[1] State Farm's failure to cite any term or condition of any of the three (3) policies referenced herein, specifically, or to assert any allegation with regard to such provisions not cited is not intended to, and does not, waive State Farm's right to rely upon such terms and conditions of such policies herein, or to assert coverage defenses related to the same.

insured.

This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property;

****

16. To **personal injury** or **advertising injury:**

****

c. arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

****

**SECTION II OPTIONAL COVERAGES**

---

**OPTIONAL COVERAGES**

The following Optional Coverages are subject to the terms and conditions applicable to Section II of this policy, unless otherwise indicated. Each Optional Coverage applies only as indicated in the Declaration.

**OPTION CP - Clergy Professional Liability**

1. We will pay those sums that the insured becomes legally obligated to pay as damages because of acts, errors or omissions arising out of **"counseling activities"** or **"counseling activities"** of others for which the insured is liable.

2. This optional coverages does not apply to:

****

d. liability of any insured arising out of any licentious, immoral or sexual behavior associated with, leading to or culminating in any activity of a sexual nature.

e. any dishonest, fraudulent, criminal or malicious act or omission of any insured; or

****

3. **WHO IS AN INSURED**, under SECTION II DESIGNATION OF INSURED, is amended to include as an insured any employee occupying a position named in the Declarations for this Option CP. However, no person is an insured under this optional coverage unless the position of that person is named in the Declarations for this Option CP.

4. The most we will pay for each claim for all damages because of acts, errors or omissions arising out of **"counseling activities"** is the Coverage L - Business Liability limit shown in the Declarations. This Coverage L limit is the most we will pay during the policy period for the sum of all claims for damages arising out of "**counseling activities**".

5. When used in the provisions of this Option CP, "**counseling activities**" means consultations or communications between an insured and another person where the insured, acting within the scope of their employment by you, offers advise or guidance with regard to conduct or proposed conduct.

****

7. This policy does not apply to damages because of acts, errors or omissions arising out of "**counseling activities**" except as provided in this optional coverage.

****

**SECTION II**
**DESIGNATION**
**OF INSURED**

---

**WHO IS**
**AN INSURED**

1. If you are designated in the Declarations as:

****

d. a religious or educational institution, you are an insured. Your clergy, vestry, counsel members, deacons, elders, executive officers, members of the board of education, board of governors or board of trustees, Sunday school superintendents, Sunday school teachers, wardens or duly appointed volunteers are insureds but only with respect to their duties as such. Any church organization authorized or controlled by you and any of your other members, if you are unincorporated, are also insureds but only while acting on your behalf.

****

**SECTION II**
**DEFINITIONS**

---

**DEFINITIONS**

****

When used in the provisions applicable to Section II of this policy (including endorsements forming a part of this policy):

****

3. **bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from the **bodily injury**, sickness or disease at any time;

****

10. **occurrence means:**

a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in **bodily injury** or **property damage;** or

b. the commission of an offense, or a series of similar or related offenses, which results in **personal injury** or **advertising injury.**

For purposes of this definition, **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property will be considered an accident;

11. **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses;

a. false arrest, detention or imprisonment;

b. malicious prosecution;

c. wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owners, landlord or lessor;

d. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. oral or written publication of material that violates a person's right of privacy;

****

*See* Exhibit "A".

19. The Homeowner's policy provides, in pertinent part, as follows:

****

**DEFINITIONS**

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations.**

Certain words and phrases are defined as follows:

1. **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

**Bodily injury** does not include:

a. any of the following which are communicable: disease, bacteria, parasite, virus,

or other organism, any of which are transmitted by any **insured** to any other person;

b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "**insured**" means you and, if residents of your household:

a. your relatives; and

b. any other person under the age of 21 who is in the care of a person described above.

Under Section II, "**insured**" also means:

c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

****

7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury**; or

b. **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not property damage.

****

**SECTION II - LIABILITY COVERAGES**

**COVERAGE L - PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

**COVERAGE M - MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

    a. arises out of a condition on the **insured location** or the ways immediately adjoining;

    b. is caused by the activities of an **insured**;

    c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

    d. is caused by an animal owned by or in the care of an **insured**; or

****

**SECTION II - EXCLUSIONS**

1. Coverage L and Coverage M do not apply to:

    a. **bodily injury** or **property damage**:

        (1) which is either expected or intended by the **insured**; or

        (2) which is the result of willful and malicious acts of the **insured**;

    b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

        (1) to activities which are ordinarily incident to nonbusiness pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

©) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

****

*See* Exhibit “B”.

20. The PLUP provides in pertinent part, as follows:

****

**PERSONAL LIABILITY UMBRELLA POLICY**

**AGREEMENT**

We agree to provide the insurance described in this policy. You agree to pay premium when due and comply with the provisions of this policy.

**DEFINITIONS**

In this policy, "you" and "your" refer to the "**insured**" as defined. "We", "us" and "our" refer to the Company listed in the **Declarations**. The following definitions are important.

****

2. "**business**" means a trade, profession or occupation.

3. "**business property**" means premises on which a business is conducted, or property rented or held for rental in whole or in part to others.

4. "**Declarations**" means the policy **Declarations**, an amended **Declarations**, changes added by the most recent renewal notice or certificate, or an endorsement changing any of these.

5. "**insured**" means:

   a. the **named insured**;

****

6. "**loss**" means an accident that results in **personal injury** or **property damage** during the policy period. This includes injurious exposure to conditions.

7. "**named insured**" means the person named in the **Declarations** and the spouse. The spouse must be a member of the same household.

8. "**net loss**" means:

   a. the amount you are legally obligated to pay as damages for **personal injury** or **property damage**; and

   b. all reasonable expenses you incur in the investigation, settlement and defense of a claim or suit at our request. This does not include expenses covered by another policy, expenses we cover under the **Defense and Settlement** section of this policy, and salaries of your employees.

9. "**personal injury**" means:

   a. bodily harm, sickness, disease, shock, mental anguish or mental injury. This includes required care, loss of services and death resulting therefrom. **Personal injury** does not include any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person. It also does not include the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person.

   b. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation;

   c. libel, slander, defamation of character or invasion of rights of privacy; and

   d. assault and battery.

****

**COVERAGES**

1. **Coverage L - Personal Liability**. If you are legally obligated to pay damages for a **loss**, we will pay your **net loss** minus the **retained limit**. Our payment will not exceed the amount shown on the **Declarations** as Policy Limits - Coverage L - Personal Liability.

2. **Defense and Settlement**.

   a. We may investigate, negotiate and settle a claim or suit covered by this policy.

   b. When the claim or suit is covered by this policy, but not covered by any other policy available to you:

(1) we will defend the suit against you;

(2) we will pay the premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

(3) we will pay the expenses we incur and costs taxed against you in suits we defend;

(4) we will pay the reasonable expenses you incur at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

(5) we will pay prejudgment interest awarded against you on that part of the judgment we pay under Coverage L; and

(6) we will pay the interest on the interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court, that part of the judgment which does not exceed the limit of liability that applies.

c. Payments under Defense and Settlement Coverage, except a settlement payment, are in addition to the Coverage L amount.

d. Our obligation to defend a claim or suit ends when the amount we pay for damages equals our limit of liability under Coverage L.

**EXCLUSIONS**

We will not provide insurance:

2. For **personal injury** or **property damage**:

a. which is either expected or intended by you; or

b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

****

5. for any **loss** caused by providing or failing to provide a professional service.

6. for any loss caused by your **business** operations or arising out of **business property**:

a. unless;

(1) the underlying insurance listed on the **Declarations** provides coverage for the **loss**; and

(2) the **loss** does not involve an **automobile**, **recreational motor vehicle**,

or watercraft.

****

**POLICY ENDORSEMENT**

****

**DEFINITIONS**

The following are added:

****

17. **"bodily injury"** means physical injury, sickness, disease, emotional distress or mental injury to a person. This includes required care, loss of services and death resulting therefrom.

    **Bodily injury** does not include:

    a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person; or

    b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person.

**"loss"**, **"net loss"** and **"personal injury"** are replaced with the following:

6. **"loss"** means:

    a. an accident, including injurious exposure to conditions, which results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

    b. the commission of an offense, or series of similar or related offenses, which result in personal injury during the policy period.

****

8. **"net loss"** means:

    a. the amount you are legally obligated to pay as damages for **bodily injury**, **personal injury** or **property damage**; and

    b. all reasonable expenses you incur in the investigation, settlement and defense of a claim or suit at our request. This does not include expenses covered by another policy, expenses we cover under the **Defense and Settlement** section of this policy, and salaries of your employees.

9. **"personal injury"** means injury caused by one or more of the following offenses:

a. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution;

b. libel, slander, defamation of character or invasion of rights of privacy.

**EXCLUSIONS**

Exclusion 2. is replaced with the following:

2. for **bodily injury** or **property damage**:

a. which is either expected or intended by you; or

b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

Exclusion 6. is replaced with the following:

6. for any loss caused by your **business** pursuits or arising out of **business property**:

a. unless:

(1) the underlying insurance listed on the **Declarations** provides coverage for the **loss**; and

(2) the **loss** does not involve an **automobile**, **recreational motor vehicle**, or watercraft.

****

The following is added:

16. for **personal injury** when you act with specific intent to cause harm or injury.

All other policy provisions apply.

****

*See* Exhibit "C".

**BASIS FOR DECLARATORY JUDGMENT ACTION**

21. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church Policy Defendant Stallworth is an "insured" under the liability coverage of the policy, and if so, the amount of liability coverage it affords him.

22. There exists a controversy as to whether under the facts alleged and the

terms and conditions of the Church policy whether State Farm owes defense and indemnity to Stallworth in either the Hinds County or Maryland actions.

23. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy whether "bodily injury" has been alleged.

24. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy whether "personal injury" has been alleged.

25. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy whether an "occurrence" has been alleged.

26. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy the exclusion precluding coverage for "bodily injury" resulting from acts "expected or intended" or resulting from "willful or malicious acts" applies.

27. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy the exclusion precluding coverage for "personal injury" arising out of the "willful violation of a penal statute" applies.

28. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy the Clergy Professional Liability coverage applies.

29. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy the exclusion for "liability of any insured arising out of any licentious, immoral or sexual behavior" applies to preclude coverage under the Clergy Professional Liability coverage.

30. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy there have been "counseling activities", as defined.

31. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy Stallworth is an "insured" under Option CP-Clergy Professional Liability coverage.

32. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Church policy Coverage M benefits are owed to Defendant Brown.

33. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Homeowner's policy State Farm owes defense and indemnity to Stallworth in either the Hinds County or Maryland actions.

34. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Homeowner's policy "bodily injury" has been alleged.

35. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Homeowner's policy an "occurrence" has been alleged.

36. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Homeowner's policy the "intentional acts" exclusion applies to preclude coverage.

37. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Homeowner's policy the "business pursuits" exclusion applies to preclude coverage.

38. There exists a controversy as to whether under the facts alleged and the terms and conditions of the Homeowner's policy the "professional services" exclusion applies to preclude coverage.

39. There exists a controversy as to whether under the facts alleged and the

terms and conditions of the Homeowner's policy whether any Coverage M benefits are owed to Defendant Brown.

40. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP State Farm owes defense and indemnity to Stallworth in either the Hinds County or Maryland actions.

41. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP, "personal injury" has been alleged.

42. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP, "bodily injury" has been alleged.

43. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP, "loss" has been alleged.

44. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP, an "accident" has been alleged.

45. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP the "intentional acts" or "willful and malicious acts" exclusion applies to preclude coverage.

46. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP the "professional services" exclusion applies to preclude coverage.

47. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP the "business operations" exclusion applies to preclude coverage.

48. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP the "professional services" exclusion applies to preclude coverage.

49. There exists a controversy as to whether under the facts alleged and the terms and conditions of the PLUP that the exclusion for "personal injury when you act with specific intent to cause harm or injury" applies to preclude coverage.

## PRAYER FOR RELIEF

50. For these reasons and for any such other reasons which may be revealed through discovery, State Farm seeks this Court's determination as to the coverage issues outlined herein, and others which may be presented during discovery.

**WHEREFORE, PREMISES CONSIDERED**, State Farm requests this Court to enter its order declaring the rights and duties of State Farm under the three contracts of insurance above described, the Church Policy, the Homeowner's policy, and the PLUP, and declaring the liability, if any, owed to Defendants herein as a result of the claims which have been made, or could have been made in either the Hinds County or Maryland actions. State Farm also requests any such other relief to which it may be entitled.

**RESPECTFULLY SUBMITTED**, this the 5th day of December 2005.

**WEBB, SANDERS, & WILLIAMS, P.L.L.C.**
**POST OFFICE BOX 496**
**TUPELO, MISSISSIPPI 38802-0496**
**(662) 844-2137**
**DAN W. WEBB, MSB# 7051**
**ROECHELLE R. MORGAN, MSB# 100621**
**NORMA CARR RUFF, MSB #5721**

**BY:** Rochelle P. Morgan